UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<table>
<tr><td>

FUN K. CHAN,

    Plaintiff,

 – against –

PATRICK R. DONAHOE
*Postmaster General of the United States Postal
Service,*

    Defendant.

</td></tr>
</table>

**MEMORANDUM, ORDER &
JUDGMENT**

13-CV-2599

**Parties**

**Appearances**

Fun K. Chan

Jonathan T. Trexler
Trexler Law, P.C.
10 East 39th Street, Suite 1208
New York, NY 10016
(212) 376-3216
jtrexler@jtrexlerlaw.com

Patrick R. Donahoe
*Postmaster General of the United
States Postal Service*

Matthew Silverman
United States Attorney's Office
E.D.N.Y. Civil Division
271 Cadman Plaza East, 7th Floor
Brooklyn, NY 11201
(718) 254-6409
matthew.silverman@usdoj.gov

1



**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I.      Introduction ...................................................................................................3
II.     Facts............................................................................................................4
  A.    Background....................................................................................................4
  B.    Employment...................................................................................................4
  C.    Timeline of Events Summary ........................................................................5
  D.    Plaintiff's EEOC Actions ...........................................................................13
    1.  EEOC Complaint 1...................................................................................15
      a.  Events Preceding Complaint ................................................................15
      b.  Complaint...........................................................................................16
    2.  EEOC Complaint 2...................................................................................16
      a.  Events Preceding Complaint ................................................................16
      b.  Complaint...........................................................................................16
    3.  EEOC Complaint 3...................................................................................17
      a.  Events Preceding Complaint ................................................................17
      b.  Complaint...........................................................................................17
    4.  EEOC Complaint 4...................................................................................18
      a.  Events Preceding Complaint ................................................................18
        i.   Plaintiff's July 16, 2007 Suspension...............................................18
        ii.  Plaintiff's January 17, 2008 Suspension ........................................18
        iii. Plaintiff's March 22, 2008 Notice of Removal...........................18
        iv.  Plaintiff's February 2, 2009 Notice of Removal.........................19
        v.   Plaintiff's Supervisor Wook Hong Issued Letter of Warning After He
             Curses at Plaintiff and Threatens to Fire Him.............................20
      b.  Complaint...........................................................................................21
    5.  EEOC Complaint 5...................................................................................22
      a.  Events Preceding Complaint ................................................................22
      b.  Complaint...........................................................................................22
    6.  EEOC Complaint 6...................................................................................23
      a.  Events Preceding Complaint ................................................................23
        i.   Plaintiff's April 30, 2010 Notice of Removal.............................23
        ii.  Plaintiff's July 24, 2010 Notice of Removal...............................23
      b.  Complaint...........................................................................................24
  E.    Arbitration and Administrative Law Judge Rulings........................25
    1.  Arbitration Decision................................................................................25
    2.  Administrative Law Judge Decision ........................................................26
  F.    Linden Hill Supervisors' Awareness of Plaintiff's Protected Activity ..........27
  G.    Similarly Situated Employees .....................................................................28
III.    Summary Judgment Standard .........................................................................29
  A.    Effect of Prior Decision by Independent Tribunal .........................................30
  B.    Consideration of Relevant Background Evidence............................................31

IV.    Law .................................................................................................31
  A.    Statutes.............................................................................................31
  B.    Exhaustion of Administrative Remedies Standard .........................32
  C.    Discrimination Claims Standard......................................................32
    1.    Plaintiff's Burden:  Prima Facie Case .....................................33
      a.    Stray Remarks Insufficient to Establish Prima Facie Case........33
      b.    Inference Against Discrimination .................................................34
    2.    Employer's Burden:  Articulate Non-Discriminatory Reason for Employment
      Action .......................................................................................34
    3.    Assessing Whether Employer's Stated Reason is Pretextual...........34
  D.    Retaliation Claim Standard...............................................................35
    1.    Plaintiff's Burden:  Prima Facie Case .....................................35
      a.    First Prong: Engagement in Protected Activity ...........................36
      b.    Second Prong: Employer's Awareness of Protected Activity ...................36
      c.    Third Prong: Adverse Employment Action .................................36
      d.    Fourth Prong: Causal Connection between Adverse Action and Protected
      Activity.......................................................................................37
        i.    Temporal Proximity .................................................................37
        ii.    Similarly Situated Comparators ...............................................37
    2.    Employer's Burden:  Articulate Non-Retaliatory Reason for Employment
      Action .......................................................................................38
    3.    Assessing Whether Employer's Stated Reason is Pretextual...........38
V.    Application of Law to Facts .............................................................40
  A.    Exhaustion of Administrative Remedies .........................................40
    1.    Race and Age Discrimination Claims .......................................40
    2.    National Origin Discrimination Claim ......................................40
  B.    Discrimination Claims......................................................................40
    1.    Race ..........................................................................................40
    2.    Age ...........................................................................................41
  C.    Retaliation Claim..............................................................................41
    1.    The Arbitration and Administrative Law Judge Decisions Do Not Sufficiently
      Consider Background Evidence Underlying Plaintiff's Allegations of
      Retaliation.................................................................................41
    2.    Plaintiff Has Established a Prima Facie Showing of Retaliation and
      Sufficiently Alleged Pretext .....................................................43
VI.    Conclusion .......................................................................................45

# I.   Introduction

Fun K. Chan delivered mail for the United States Postal Service ("USPS" or "Postal

Service") for years without a record of discipline.  He claims that, beginning in 2005, he was

dogged by insistent surveillance designed to discover deviations from detailed regulations of postal employees' conduct.

On July 7, 2010, after twenty-two years of service with the Postal Service, plaintiff left his mailbag unattended for approximately ten minutes—a violation of regulations—while he used a restroom. For this deviation he was discharged.

Chan alleges that his supervisors discriminated and retaliated against him. These actions, he claims, were based on his national origin, his race and his age. *See* Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621, *et seq.* (2014), and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16 (2014).

The administrative law judge ("ALJ") who ruled on Chan's current claims failed to assess extensive evidence of prior retaliation dating back to 2005.

Defendant's motion for summary judgment with respect to plaintiff's present Title VII retaliation claim is denied. Motions for summary judgment regarding plaintiff's national origin, race and age discrimination claims under Title VII and the ADEA are granted.

## II. Facts

### A. Background

Plaintiff, a citizen of the United States, was born in Hong Kong in 1965, and immigrated to the United States in 1985 at age twenty. (Silverman Decl. Ex. Q 7:7-16, ECF No. 28-15 ("Silverman Chan Dep.").) His first language is Cantonese, but he is fluent in English. (Chan Decl. ¶ 3, ECF No. 30 ("Chan Decl.").)

### B. Employment

Beginning on October 22, 1988, Chan worked as a permanent employee for USPS for approximately twenty-two years. (Silverman Decl. Ex. T, ECF No. 28-16.) He worked as a mail

handler for approximately thirteen years, from 1988–2001, and as a mail carrier for approximately nine years, from 2001–2010. (Silverman Chan Dep. 10:19-14:25.) As a mail handler, plaintiff moved mail inside Postal Service facilities. (*Id.* at 11:1-12.) As a mail carrier, he delivered mail to homes and other places. (U.S. Postal Service, City Delivery Carriers Duties and Responsibilities, Handbook M-41 (Apr. 5, 2001), http://nalcbytrilogy.com/workplace-issues/resources/manuals/other/m41.pdf.) His twenty-two year employment history is summarized as follows:

- 1988–1995 (seven years): mail handler at College Point and Annex Stations;

- 1995–2001 (six years): mail handler at Whitestone Station;

- 2001 (few months): mail handler and mail carrier at Rego Park Station;

- 2001–2003 (two years): mail carrier at Flushing Station;

- 2003–2010 (seven years): mail carrier at Linden Hill Station.

(Silverman Chan Dep. 11:13-18, 13:24-14:6, 16:9-19, 16:1-25; ALJ Hr'g Tr. June 6, 2012, 40:12-14, Oct. 29, 2014, ECF No. 37.)

### C. Timeline of Events Summary

As a mail handler, prior to working at Linden Hill, plaintiff was not, he concedes, subject to discrimination or harassment. (ALJ Hr'g Tr. June 6, 2012, 159:15-16.) During his tenure at Linden Hill, beginning in 2005, up until his official termination date of July 24, 2010, plaintiff filed six complaints with the Postal Service's Equal Employment Opportunity Commission ("EEOC") office. *See infra* Part II.D. As the timeline below indicates, USPS attempted to fire Chan on six different occasions between 2008 and 2010. Five of the six notices of removal were not upheld at various stages of the grievance process. The timeline suggests close proximity between the reversal of disciplinary decisions through the grievance process and the issuance of

5

new disciplinary violations. For example, on July 7, 2010, only two days after Chan's April 30, 2010 notice of removal was rescinded, two supervisors made the decision to engage in street supervision of Chan, resulting in his placement on emergency off-duty status and, ultimately, a new notice of removal.

## Year 2005

**May 12, 2005**: Philana Overstreet, Customer Services Supervisor at Linden Hill from 1992 through 2012, issues Chan a letter of warning for returning to the station slightly early and changing into street clothes during "wash up time" before cleaning his station.

**October 13, 2005**: Chan is accused by Overstreet of leaving behind a bucket of mail at Linden Hill. Chan denies the allegation, noting that Overstreet had no reason to believe that he, as opposed to another carrier, left the bucket.

**October 28, 2005**: Overstreet and John Zucci, Manager of Customer Services at Linden Hill during a portion of 2005 and 2006, issue Chan a seven-day suspension for failure to follow instructions and for falsifying delivery scans.

**November 7, 2005**: Overstreet issues Chan a fourteen-day suspension for the October 13, 2005 incident.

**December 2, 2005**: Chan's November 7, 2005 discipline is rescinded as unsupported.

## Year 2006

**February 15, 2006**: Chan files an informal complaint ("EEOC Compl. 1") against Overstreet and Zucci related to the May and October 2005 incidents; Chan fills out an "Abusive Supervisor Incident Worksheet," which he attaches to the complaint.

**March 10, 2006**: Chan rejects redress mediation, the Postal Service's free mediation program, in connection with EEOC Compl. 1.

**April 5, 2006**: Chan files a complaint alleging he was harassed by Overstreet when she removed his personal belongings from his workstation and threw certain items, including his allergy medicine, in the garbage. Chan initiates the first step in collective bargaining agreement ("CBA") grievance proceedings, referred to as a "Step A" proceeding.

**April 13, 2006**: EEOC Compl. 1 is withdrawn.

**May 2, 2006**: A Step A meeting regarding Chan's April 5, 2006 complaint is held. The parties have not stated the outcome of this decision in their pleadings.

**May 9, 2006**: Chan initiates the second step in CBA proceedings, referred to as a "Step B" proceeding, in connection with his April 5, 2006 complaint. The parties have not stated the outcome of this decision in their pleadings.

## Year 2007

**March 16, 2007**: Chan requests and receives assistance on his route because there is ten inches of snow on the ground. He returns somewhat early to the station; Overstreet screams at him, accuses him of requesting assistance unnecessarily, and demands he go to the manager's office. Chan is put on emergency off-duty placement for this conduct. Chan denies ever screaming or yelling at Overstreet.

**April 4, 2007**: Chan is issued a seven-day suspension based on the events of March 16, 2007. Chan files an anonymous, informal complaint ("EEOC Compl. 2") against Overstreet on the same day.

**April 27, 2007**: Chan rejects redress meditation.

**April 28, 2007**: Informal EEOC Compl. 2 is closed.

**May 1, 2007**: Chan is allegedly subject to a new reprisal by Overstreet for grieving his emergency off-duty placement related to the March 16, 2007 incident and the seven-day suspension that followed. The parties have not explained the facts related to this May 1, 2007 reprisal in their pleadings.

**May 21, 2007**: Chan files an informal complaint ("EEOC Compl. 3") against Overstreet regarding the alleged May 1, 2007 reprisal.

**June 7, 2007**: Informal EEOC Compl. 3 is closed.

**June 22, 2007**: Chan files a formal complaint in connection with EEOC Compl. 3.

**July 16, 2007**: Chan is issued a fourteen-day suspension by Overstreet and Gene Daly, Customer Service Manager at Linden Hill, for failure to follow instructions and for failure to safeguard the mail. Chan apparently left two full mailbags within his sight while bringing two other mailbags into a nearby building before returning to retrieve the remaining bags.

**July 27, 2007**: A Step A proceeding is initiated regarding Chan's July 16, 2007 suspension.

**August 20, 2007**: The seven-day suspension related to the April 4, 2007 incident is reduced to a letter of warning at a Step A decision.

**September 10, 2007**: In accordance with the USPS grievance system for formal complaints, a National Equal Employment Opportunity Investigative Services Office ("NEEOISO") investigation report is produced related to EEOC Compl. 3.

**September 19, 2007**: At a Step B decision, Chan's fourteen-day suspension issued on July 16, 2007 is reduced to a seven-day suspension.

**October 3, 2007**: Chan requests an administrative hearing before the EEOC regarding EEOC Compl. 3, premised on the alleged reprisal of May 1, 2007.

## Year 2008

**January 17, 2008**: Chan is issued a fourteen-day suspension after Linden Hill carrier Danny Mulhern allegedly starts an argument with him. Overstreet claims she saw Chan attempt to punch Mulhern. Chan denies this.

**March 22, 2008**: Chan is issued a notice of removal by Overstreet for briefly using his cell phone on the workplace floor.

**April 1, 2008**: Chan agrees to participate in EEOC mediation in connection with EEOC Compl. 3.

**April 17, 2008**: As a result of EEOC mediation regarding EEOC Compl. 3, USPS rescinds the March 22, 2008 notice of removal. Formal EEOC Compl. 3 is settled.

**October 31, 2008**: A letter of complaint is allegedly written to the Postmaster of Linden Hill from Chan's customers, Drs. Chung and Huang. Both later provide written letters stating that neither wrote nor signed this letter.

## Year 2009

**January 22, 2009**: Wook Hong, Acting Customer Services Supervisor at Linden Hill from January 2009 to March 2010, compares Chan's work to that of Joseph Alini and tells Chan he wants to see Alini's misdelivered mail. Alini is a "floater carrier" who delivers Chan's route on Chan's days off. Chan brings back pieces of Alini's misdelivered mail to Linden Hill.

**February 2, 2009**: Hong issues Chan a notice of removal for returning pieces of Alini's misdelivered mail.

**February 6, 2009**: Step A proceeding is initiated regarding Chan's February 2, 2009 notice of removal.

**February 25, 2009**: Hong moves Chan's desk so that he is positioned directly in front of the supervisor's desk.

**March 5, 2009**: Hong screams and curses at Chan on the workplace floor.

**March 31, 2009**: Hong tells Chan he should be able to carry two bags of mail at a time. Chan replies that this is a safety hazard. Hong orders Chan to his office and tells him: "I will fire your ass. . . . I don't care. You can go to the Union, the EEO[C], your lawyer. I have lots of experience with that." Chan files an informal complaint for harassment and reprisal ("EEOC Compl. 4") against Hong regarding the February 2, 2009 notice of removal.

**April 1, 2009**: A Step A meeting regarding Chan's February 2, 2009 notice of removal is held.

**April 14, 2009**: At a Step B decision, Chan's February 2, 2009 notice of removal is rescinded and reduced to an "official discussion," which is not discipline and cannot be cited to aggregate a penalty for future misconduct.

**May 14, 2009**: Hong accuses Chan of deception, claiming he scanned the mail in the correct order, but then proceeded to deliver it out of order.

**May 20, 2009**: Chan is issued a notice of removal for allegedly delivering mail out of sequence on May 14, 2009.

**May 29, 2009**: Chan rejects redress mediation in connection with EEOC Compl. 4. Chan initiates Step A proceedings regarding his May 20, 2009 notice of removal for delivering mail out of sequence.

**June 16, 2009**: Informal EEOC Compl. 4 is closed.

**July 2, 2009**: A Step A meeting regarding Chan's May 20, 2009 notice of removal is held. Chan converts his informal EEOC Compl. 4 to a formal complaint, alleging age and race discrimination and retaliation for the February 2, 2009 and May 20, 2009 notices of removal.

**July 3, 2009**: Dr. Chung writes a letter to Linden Hill asserting that she never complained about Chan and that she did not write the October 31, 2008 letter, which Chan had shown her.

**July 5, 2009**: Dr. Huang writes a letter to Linden Hill asserting that he never complained about Chan and that he did not write the October 31, 2008 letter, which Chan had shown him.

**July 20, 2009**: Formal EEOC Compl. 4 is dismissed.

**July 31, 2009**: Chan attends Step B proceedings regarding his May 20, 2009 notice of removal. The Step B decision results in "impasse."

**August 7, 2009**: Chan is placed on emergency off-duty status without pay pending removal from the Postal Service because his May 20, 2009 notice of removal resulted in impasse at Step B on July 31, 2009.

**August 10, 2009**: Chan files an informal complaint ("EEOC Compl. 5") against Douglas Palma, Manager at the Collection Unit in Flushing, and Hong, alleging reprisal based on race and age discrimination regarding the notice of removal issued on May 20, 2009.

**August 19, 2009**: Chan accepts redress mediation in connection with EEOC Compl. 5.

**August 24, 2009**: Chan appeals EEOC Compl. 4 to the EEOC Office of Federal Operations ("OFO").

**September 20, 2009**: Hong apologizes to Chan for screaming and cursing at him on March 5, 2009.

**September 22, 2009**: Redress mediation is conducted in connection with EEOC Compl. 5. No resolution is reached.

**October 28, 2009**: Chan provides a confidential witness affidavit to the National Labor Relations Board ("NLRB") in connection with his May 20, 2009 notice of removal.

**November 4, 2009**: EEOC Compl. 5 is closed.

**November 20, 2009**: Chan's May 20, 2009 notice of removal is reduced to a fourteen-day suspension in advance of arbitration. Chan is reinstated.

**December 1, 2009**: Chan submits a form to receive backpay he is entitled to for days worked between August 7, 2009 and November 20, 2009, minus the fourteen-day suspension resulting from the May 20, 2009 notice of removal.

## Year 2010

**February 17, 2010**: EEOC ALJ reverses and remands EEOC Compl. 4 to USPS so that it can determine whether retaliation or age discrimination was involved in Chan's May 20, 2009 notice of removal.

**April 30, 2010**: Chan is issued a notice of removal for accepting cash from a customer to cover the cost of sending certain pieces of mail by certified mail.

**May 1, 2010**: Chan submits a form to NEEOISO requesting pre-complaint counseling from a dispute resolution specialist, alleging that he was discriminated and retaliated against by Rudy Marinacci, Manager of Customer Services at Linden Hill, as a result of filing EEOC Compl. 4, which alleged harassment and reprisal regarding the February 2, 2009 and May 20, 2009 notices of removal.

**May 13, 2010**: A Step A proceeding is initiated regarding Chan's April 30, 2010 notice of removal.

**May 18, 2010**: The EEOC permits Chan to amend EEOC Compl. 4 to include the alleged May 1, 2010 reprisal, but dismisses the amended complaint for failure to state a claim. Neither party elaborates upon the facts related to the May 1, 2010 reprisal in their pleadings.

**June 9, 2010**: A Step A meeting regarding Chan's April 30, 2010 notice of removal is held.

**July 3, 2010**: Chan calls the Postal Service's EEOC Office to complain that Marinacci had included a lie in Chan's April 30, 2010 notice of removal. The supervisor allegedly stated that a customer had complained about Chan knowing that the customer never did. The customer denied making the statement in writing.

**July 5, 2010**: A Step B decision rescinds Chan's April 30, 2010 notice of removal.

**July 7, 2010**: Chan is placed on emergency off-duty status for failure to safeguard postal property and the mail after he allowed a building doorman to watch his mail cart for approximately ten minutes while he used the restroom.

**July 8, 2010**: Chan files an informal EEOC complaint ("EEOC Compl. 6") regarding the July 7, 2010 incident.

**July 23, 2010**: Chan is offered and elects redress mediation in connection with EEOC Compl. 6.

**July 24, 2010**: Chan is issued a notice of removal for the July 7, 2010 incident.

**August 3, 2010**: Chan is put on emergency off-duty status without pay for allegedly improperly removing mail from the mailstream. Chan denies the allegation.

**August 4, 2010**: Chan is interviewed by special agents Jocelynne Pastrana and Jackie Ventura with USPS Office of the Inspector General ("OIG") about whether (1) he left his Postal Service pushcart at a liquor store; (2) put mail in his personal backpack; (3) left his mail cart and "intelligent mail" device unattended; and (4) misdelivered a test piece of mail.

**August 9, 2010**: Chan requests an EEOC hearing in connection with EEOC Compl. 4, which alleged age discrimination and retaliation regarding Chan's February 2, 2009 and May 20, 2009 notices of removal.

**August 19, 2010**: Chan swears a confidential witness affidavit with the NLRB in connection with his July 24, 2010 notice of removal, asserting he was discharged for filing grievances, and noting that he has still not received backpay resulting from the May 20, 2009 notice of removal. Chan accepts redress mediation in connection with EEOC Compl. 5.

**September 10, 2010**: A Step A meeting regarding Chan's July 24, 2010 notice of removal is held.

**September 22, 2010**: A Step B meeting regarding Chan's July 24, 2010 notice of removal is held.

**September 24, 2010**: USPS cancels mediation in connection with informal EEOC Compl. 6.

**September 29, 2010**: A Step B decision regarding Chan's July 24, 2010 notice of removal results in impasse.

**October 1, 2010**: Chan is issued a notice of removal for allegedly removing mail from his tray and placing it in his bag, misdelivering a test piece of mail, using his personal vehicle without permission, and leaving his mail cart unattended in a liquor store, all issues investigated by the OIG on August 4, 2010.

**October 5, 2010**: Informal EEOC Compl. 6 is closed.

**October 15, 2010**: Chan files a formal complaint in connection with EEOC Compl. 6 against Sean Duffy, Station Manager at Linden Hill in July and August 2010, and Anna Palanska, Acting Customer Services Supervisor at Linden Hill from April 2010 to August 2010, regarding the incidents of July 7, 2010, July 24, 2010, August 3, 2010, and October 1, 2010.

**Year 2011**

**April 13, 2011**: NEEOISO finalizes its report regarding the allegations in EEOC Compl. 6.

**May 12, 2011**: An arbitration decision in connection with Chan's July 24, 2010 notice of removal finds just cause for Chan's removal but no just cause for placing him on emergency off-duty status.

**May 11, 2011**: Chan requests an EEOC hearing related to EEOC Compl. 6.

**April 11, 2012**: An evidentiary hearing is held before EEOC ALJ Ricardo Cuevas in connection with EEOC Compls. 4 and 6.

**June 6, 2012**: An evidentiary hearing is held before Cuevas in connection with EEOC Compls. 4 and 6.

**October 25, 2012**: An evidentiary hearing is held before Cuevas in connection with EEOC Compls. 4 and 6. The related ALJ decision, upholding Chan's termination, is released.

**March 11, 2013**: A notice of final action is issued in connection with EEOC Compls. 4 and 6. USPS adopts and implements the ALJ decision.

### D. Plaintiff's EEOC Actions

Chan pursued formal EEOC complaints with respect to his third, fourth and sixth complaints. *See supra* Part II.C. The fourth and sixth complaints were combined and eventually heard by ALJ Cuevas, who found USPS's actions of May 20, 2009, July 7, 2010, July 24, 2010, and August 3, 2010 legitimate and non-discriminatory. (Silverman Decl. Ex. O, ECF No. 28-14 ("ALJ Decision"); Feuerstein Decl. Ex. E ("EEOC Compl. 4"), ECF No. 28-5 ("Feuerstein Decl."); Feuerstein Decl. Ex. J ("EEOC Compl. 6").) Although the ALJ decision dealt with Chan's race- and age-based claims under Title VII and the ADEA, it did not address Chan's claim of retaliation in isolation or assess whether plaintiff's supervisors at Linden Hill—in retaliation for the multiple race- and age-based complaints Chan had filed with the EEOC— collectively sought to build a disciplinary record against Chan that ultimately resulted in the July 24, 2010 notice of removal. (ALJ Decision; ALJ Hr'g Trs., Apr. 11, 2012, June 6, 2012, Oct. 25, 2012, ECF No. 37.)

13

Chan explained that the filing of the EEOC complaints initially succeeded in making his supervisors more cautious about discriminating and retaliating against him. (Silverman Chan Dep. 41:6-9.) He testified: "Sometimes I just feel like - - when I call them [the EEOC], the [offending] manager [would] stop [for] one or two months, [but] then it [would] come back again." (*Id.*) According to Chan, "[f]ollowing his first [informal] EEOC complaint, . . . supervisors started to regularly follow him during his delivery route, and stand[] directly behind his desk while he would case mail, for unusual, extended periods of time." (Silverman Chan Dep. 86:9-11, 239:9-11.) Linden Hill supervisors also told Chan not to sit down while he was working. (Silverman Decl. Ex. F, ECF No. 28-13 ("Oct. 28, 2009 Confidential Witness Aff.").)

Chan claims Douglas Palma, a non-Linden Hill USPS supervisor, "began a pattern and practice of following [Chan] on his mail delivery route to catch him breaking any of the myriad rules and regulations set forth in the NALC [National Association of Letter Carriers] Agreement or other regulations." (Pl.'s 56.1 Add'l Facts ¶ 8, ECF No. 34. *See also* Silverman Chan Dep. 86:9-11.) Rudy Marinacci, another USPS supervisor, would allegedly stand behind Chan and ask why Chan was drinking water. (Silverman Chan Dep. 285:7-15.) Overstreet accused plaintiff of "time wasting practices" such as "walk[ing] long distances to put away equipment such as a bucket or tray." (Silverman Decl. Ex. C, ECF No. 28-13 ("Step B Decision May 9, 2006").) Chan argues that the treatment he endured "was specifically designed to create a record of discipline which would support his eventual termination under the progressive disciplinary system set forth in the applicable [CBA] between the USPS and [NALC]." (Chan Decl. ¶ 6.)

14

### 1. EEOC Complaint 1

#### a. Events Preceding Complaint

As early as 2004, one year after plaintiff started working at Linden Hill, he felt harassed by his immediate supervisor, Overstreet, who joked about the way Chan spoke English, mimicked his accent, and asked him how to spell words like "library," "whatever," and "hour." (Chan Decl. ¶¶ 8–9.) Throughout 2005, Overstreet disciplined plaintiff three times. On May 12, 2005, Overstreet issued plaintiff a letter of warning when he returned slightly early from his shift and changed into street clothes during his "wash up time" before cleaning up his station. (Overstreet Decl. Ex. A, ECF No. 28-10 ("Overstreet Decl.").) Five months later, on October 28, 2005, Overstreet and Zucci issued plaintiff a seven-day suspension for failure to follow instructions and for falsifying scans. (*Id.* at Ex. B.) Less than two weeks later, on November 7, 2005, Overstreet issued plaintiff a fourteen-day suspension, claiming that plaintiff had left behind a bucket of mail on October 13, 2005. (*Id.* at Ex. D.) Management rescinded the November discipline as unsupported in a Step B decision dated December 2, 2005. (Chan Decl. ¶ 10.)

When Overstreet issued the seven-day suspension on October 28, 2005, she could have simultaneously addressed the October 13, 2005 conduct, but chose instead to issue it separately, activating the CBA progressive disciplinary system. (*See* Mot. for Summ. J. Hr'g Tr. Oct. 28, 2014) (noting that the penalties for individual violations build upon previous violations; *e.g.*, if an employee receives a seven-day suspension for a violation of a regulation, she or he could receive a fourteen-day suspension for a subsequent violation).) Plaintiff felt especially singled out by Overstreet. (*See, e.g.*, Overstreet Decl. at Ex. D.) For example, Chan claims that

Overstreet harassed him by removing personal belongings from his work station; she allegedly threw away certain items, including his allergy medicine. (Chan Decl. Ex. C.)

### b. Complaint

On February 15, 2006, Chan filed an "Abusive Supervisor Incident Worksheet," which he attached to his first informal EEOC complaint based on race (Agency No. 4A-110-0081-06). (Silverman Decl. Ex. B, ECF No. 28-13; Feuerstein Decl. Ex. B.) Plaintiff rejected redress mediation on March 10, 2006. (*Id.*) Grievance proceedings were initiated on April 5, 2006. (*Id.*) For reasons not explained by either party, plaintiff withdrew the informal complaint on April 13, 2006, and did not file a formal complaint. (*Id.*) Chan attended a Step A meeting on May 2, 2006, and received a Step B decision on May 9, 2006. (Step B Decision May 9, 2006.)

### 2. EEOC Complaint 2

#### a. Events Preceding Complaint

On March 16, 2007, plaintiff requested and received assistance on his mail route because there were ten inches of snow on the ground. (Trexler Decl. Ex. A 43:5-9, ECF No. 33-1 ("Trexler Chan Dep.").) When plaintiff returned approximately thirty minutes early to the station, Overstreet yelled at him, accusing him of requesting assistance unnecessarily. (*Id.* at 43:10-16) She instructed plaintiff to go to the manager's office and enlisted Mike Manganiello to place Chan on emergency off-duty placement for "conduct unbecoming." (Overstreet Decl. Ex. F.) Plaintiff was issued a seven-day suspension on April 4, 2007 as a result of the March 16, 2007 incident. (*Id.* at Ex. G.)

#### b. Complaint

Plaintiff anonymously commenced a second EEOC action (Agency No. 4A-110-0092-07) on April 4, 2007 for harassment in connection with the March 16, 2007 incident. (Feuerstein

16

Decl. Ex. C.) He rejected redress mediation on April 27, 2007. (*Id.*) For reasons not stated by either party, the informal complaint was closed on April 28, 2007. (*Id.*) Plaintiff did not pursue a formal complaint. (*Id.*) Chan grieved the suspension and, on August 20, 2007, at the third step of the grievance process (pre-arbitration), the parties agreed to reduce the suspension to a letter of warning. (*Id.* at Ex. H.; Chan Decl. Ex. D.)

### 3. EEOC Complaint 3

#### a. Events Preceding Complaint

Plaintiff allegedly faced harassment based on a May 1, 2007 incident related to management reprisals connected to Chan's grievance of the discipline issued to him on April 4, 2007, Chan's second EEOC case. (Feuerstein Decl. Ex. D.) Neither party describes the details of this reprisal.

#### b. Complaint

Plaintiff commenced a third EEOC case (Agency No. 4A-110-0114-07) on May 21, 2007 for harassment based on the May 1, 2007 incident. (*Id.*) The informal complaint was closed on June 7, 2007. (*Id.*) Plaintiff filed a formal complaint on June 22, 2007. (*Id.*) NEEOISO produced an investigation report on September 10, 2007. (*Id.*) Plaintiff requested an administrative hearing before the EEOC on October 3, 2007. (*Id.*) On April 1, 2008, USPS offered mediation a second time, and plaintiff agreed to participate. (*Id.*) On April 17, 2008, EEOC Compl. 3 was settled; mediation was conducted, leading USPS to rescind Chan's March 22, 2008 notice of removal. (*Id.*)

17

### 4. EEOC Complaint 4

#### a. Events Preceding Complaint

##### i. Plaintiff's July 16, 2007 Suspension

Plaintiff was issued a fourteen-day suspension on July 16, 2007 for leaving two mail bags within his sight, while bringing two other mail bags into a nearby building, and then returning to retrieve the remaining two bags. (Overstreet Decl. Ex. I.) Plaintiff grieved the July 16, 2007 suspension and Step A proceedings were initiated on July 27, 2007. (*Id.* at Ex. K) In a September 19, 2007 Step B decision, plaintiff's discipline was reduced to a seven-day suspension. (*Id.*)

##### ii. Plaintiff's January 17, 2008 Suspension

On January 17, 2008, plaintiff received a fourteen-day suspension after another Linden Station carrier, Danny Mulhern, started an argument with him. (*Id.* at Ex. L.) Overstreet claimed she saw plaintiff attempt to punch Mulhern. (*Id.*) Overstreet did not ask plaintiff what happened; she only asked why plaintiff did not tell her that Mulhern wanted to fight with him before he went outside. (Chan Decl. ¶ 22.) Plaintiff told Overstreet that he did not know Mulhern wanted to fight him, and that plaintiff had stepped outside because he did not want to have an argument inside. (*Id.*)

##### iii. Plaintiff's March 22, 2008 Notice of Removal

On March 22, 2008, Overstreet issued plaintiff a notice of removal for using his cell phone on the workroom floor. (Overstreet Decl. Ex. N.) According to the notice, Overstreet observed plaintiff talking on the phone on the workroom floor; when she instructed him to end the call and return to his assignment, he ignored her and continued talking "for approximately one minute" before putting the phone away. (*Id.*) Plaintiff allegedly used his phone a second

18

time on the workroom floor later that morning. (*Id.*) Overstreet ordered plaintiff to report to the

office. (*Id.*) Plaintiff asserted three times that he would not go to the office unless his NALC

steward was present. (*Id.*)

### iv. Plaintiff's February 2, 2009 Notice of Removal

In January 2009, while plaintiff was casing mail, Hong suggested to plaintiff that a floater

mail carrier, twenty-seven-year-old Joseph Alini, who covered Chan's mail route on his days off,

was able to deliver mail faster than Chan and needed less overtime. (Silverman Chan Dep.

129:10-13.) Chan asked Hong whether he would like to see Alini's misdelivered mail; Hong

told Chan to "bring back the mail" and "prove [it to] him." (*Id.* at 129:8-130:18.) Chan brought

back misdelivered pieces of mail to show Hong on January 22, 2009. (Hong Decl. Ex. A

("Notice of Removal Feb. 2, 2009") ECF No. 28-6 ("Hong Decl.").) In response, on February 2,

2009, Hong issued plaintiff a notice of removal. (*Id.*) Approximately three weeks later, on

February 25, 2009, Hong moved plaintiff's desk directly in front of the supervisor's desk.

(Silverman Chan Dep. 230:9-11; Trexler Decl. Ex. C 52:11-20, 54:15-17, ECF No. 33-3 ("Hong

Dep.").)

Plaintiff grieved the notice of removal and Step A proceedings were initiated February 6,

2009. (Chan Decl. Ex. G.) The Step A meeting was held April 1, 2009. (*Id.*) By a Step B

decision on April 14, 2009, the notice was reduced to an "official discussion," which is not

discipline and cannot be cited to aggregate a penalty for future misconduct. (*Id.*)

19

### v. Plaintiff's Supervisor Wook Hong Issued Letter of Warning After He Curses at Plaintiff and Threatens to Fire Him

On March 5, 2009, Hong openly screamed and cursed at plaintiff on the workroom floor, using the "F word" because he thought plaintiff was responsible for making another mail carrier cry. (Hong Dep. 85:15-16). Hong told Chan:

> Every f-cking day I get a complaint about you. I don't care what you said in Chinese or what. From now on, I want you to shut your f-cking mouth while you are on the working floor. If I hear any noise from . . . your f-cking mouth, I will put you[r] f-cking ass in the street. I am speaking to you not as Manager. I am speaking to you as a Man. I will put your ass in the street.

(Oct. 28, 2009 Confidential Witness Aff. 9.) Hong allegedly continued: "Go ahead and file the EEO[C] complaint. I'm not scared." (Silverman Chan Dep. 285:5-6.) Hong was issued a letter of warning as a result of the March 5, 2009 incident. (Hong Decl. ¶¶ 34–35.) He apologized to plaintiff at EEOC mediation on September 20, 2009. (*Id.*)

On March 31, 2009, Hong told plaintiff to carry two bags of mail at a time, which plaintiff said was a safety hazard. (Oct. 28, 2009 Confidential Witness Aff. 9.) Hong said: "[Y]ou better do your job right. I will fire your ass anyway. I don't care. You can go to the Union, the EEO[C], your lawyer. I have lots of experience with that." (*Id.*)

### vi. Customers Write Letters Asserting They Did Not Complain About Chan

On October 31, 2008, a letter was allegedly sent from Dr. Huang and Dr. Chung to the Postmaster of Linden Hill Post Office complaining that Chan was unreliable and stole mail. (Chan Decl. Ex. J.) On July 3, 2009, after Chan told Dr. Chung about the letter, she sent a letter on her letterhead to Linden Hill stating that she had not written a complaint letter about Chan, and that her signature on the 2008 letter had been forged. (*Id.*) Two days later, Dr. Huang sent a

20

letter on his letterhead to Linden Hill similarly stating that he had not written the 2008 letter, and asserting that Chan "has been doing an excellent job as postman of our building." (*Id.*)

### b. Complaint

On March 31, 2009, plaintiff filed a fourth EEOC complaint (Agency No. 4A-110-0089-09) based on harassment and reprisal for the January 22, 2009 incident and the related notice of removal issued on February 2, 2009. (EEOC Compl. 4.)

Shortly thereafter, Hong accused plaintiff of delivering mail out of order, issuing Chan a notice of removal for this alleged conduct on May 20, 2009. (Hong Decl. Ex. C). Even if plaintiff had delivered his mail out of order, plaintiff alleges that it is common for carriers to deliver mail out of sequence without being disciplined. (*See, e.g.*, Trexler Decl. Ex. D 51:9-13, ECF No. 33-4 ("Trexler Marinacci Dep.") ("'Do you specifically recall any employees who received discipline for delivering mail out of sequence?' 'To the best of my recollection I do not.'").)

On May 29, 2009, nine days after Hong issued Chan a notice of removal, plaintiff rejected redress mediation in his fourth EEOC complaint. (EEOC Compl. 4.) Plaintiff grieved the notice of removal and Step A proceedings were initiated on May 29, 2009. (Silverman Decl. Ex. E, ECF No. 28-13.) The informal complaint was closed on June 16, 2009. (*Id.*) Plaintiff filed a formal complaint on July 2, 2009, alleging age discrimination and retaliation for the February 2, 2009 and the May 20, 2009 notices of removal. (*Id.*) Plaintiff was received at Step A on July 2, 2009. (*Id.*) Plaintiff's formal EEOC complaint was dismissed on July 20, 2009. (*Id.*) Plaintiff was received at Step B on July 31, 2009. (*Id.*) Step B proceedings resulted in impasse on August 7, 2009. (*Id.*) On the same day, plaintiff was placed on off-duty status without pay. (Chan Decl. Ex. H.)

Plaintiff appealed the July 20, 2009 dismissal of his complaint to the EEOC's OFO on August 24, 2009. (EEOC Compl. 4.) On October 28, 2009, plaintiff provided a confidential witness affidavit to the NLRB in connection with his May 20, 2009 notice of removal. (Oct. 28, 2009 Confidential Witness Aff.) In a decision dated February 17, 2010, the OFO determined that Chan's complaint was improperly dismissed, remanding the case back to the agency to ascertain whether the notice of removal issued to plaintiff on May 20, 2009 was related to age discrimination and/or retaliation. (Feuerstein Decl. Ex. F.)

In the meantime, plaintiff asked to amend his fourth EEOC complaint to include an alleged reprisal that took place on May 1, 2010. (*Id.* at Ex. G ("Info. for Pre-Complaint Counseling May 10, 2010").) The EEOC permitted plaintiff to amend his complaint, but dismissed the amended complaint for failure to state a claim. (*Id.* at Ex. H.)

Plaintiff requested an EEOC hearing on August 9, 2010. (EEOC Compl. 4.) Hearings regarding this EEOC complaint, and plaintiff's sixth EEOC complaint, were held on April 11, 2012, June 6, 2012, and October 25, 2012. (ALJ Decision.) *See infra* Part II.E.2.

### 5. EEOC Complaint 5

#### a. Events Preceding Complaint

On May 14, 2009, Hong accused plaintiff of delivering mail out of order, issuing Chan a notice of removal for this alleged conduct on May 20, 2009. (Hong Decl. Ex. C).

#### b. Complaint

Plaintiff filed his fifth EEOC complaint (Agency No. 4A-110-0148-09) on August 10, 2009 for harassment based on age and for reprisal related to the May 20, 2009 notice of removal. (Feuerstein Decl. Ex. I.) On August 19, 2009 plaintiff accepted redress mediation, which was conducted on September 22, 2009. (*Id.*) No resolution was reached. (*Id.*) On November 4,

2009, the informal complaint was closed, and plaintiff did not file a formal complaint. (*Id.*) On November 20, 2009, before arbitration was scheduled to take place, Chan's discipline related to his May 20, 2009 notice of removal was reduced to a fourteen-day suspension. (Silverman Decl. Ex. J, ECF No. 28-13 ("Aug. 19, 2010 Confidential Witness Aff."); Silverman Decl. Ex. Z, ECF No. 28-16.) Chan was supposed to receive back pay from August 7, 2009 to November 20, 2009 (his reinstatement date) but, despite submitting a form to accounting on December 1, 2009, Chan had not received any back pay as of August 19, 2010. (*Id.*)

### 6. EEOC Complaint 6

#### a. Events Preceding Complaint

##### i. Plaintiff's April 30, 2010 Notice of Removal

On April 30, 2010, Marinacci issued plaintiff a notice of removal for accepting cash from a customer to cover the cost of sending certain pieces of mail by certified mail. (Silverman Decl. Ex. X 57:4-68:8, ECF No. 28-16 ("Silverman Marinacci Dep.").) On May 1, 2010, Chan made a request for pre-complaint counseling alleging that Marinacci had discriminated and retaliated against him, in part based on his fourth EEOC complaint. (Info. for Pre-Complaint Counseling May 10, 2010.) Step A proceedings were initiated on May 13, 2010; Chan was received at Step A on June 9, 2010. (Chan Decl. Ex. K.) The notice of removal was rescinded at a Step B decision on July 5, 2010. (*Id.*) The Step B team found that management did not have just cause to remove Chan. (*Id.*)

##### ii. Plaintiff's July 24, 2010 Notice of Removal

On July 3, 2010, plaintiff called the USPS EEOC office to complain that Marinacci had lied in the April 30, 2010 notice of removal he had issued to Chan. (Aug. 19, 2010 Confidential Witness Aff.) In the notice of removal, Marinacci made an oblique reference to the fact that a

23

customer had complained about Chan. (*Id.*) The customer later denied ever making this comment. (*Id.*)

Four days later, on July 7, 2010, plaintiff was followed on his route by two supervisors. (Duffy Decl. Ex. A ("Notice of Removal July 24, 2010"), ECF No. 28-4 ("Duffy Decl.").) At 12:50 p.m., plaintiff entered the building at 142–18 38th Avenue. (*Id.*) Plaintiff used the restroom for approximately 10 minutes, leaving his mail cart in the lobby near the building doorman. (*See, e.g.*, Palanska Decl. Ex. B, ECF No. 28-8.) Plaintiff left some mail and his mail scanning device in the cart. (*Id.*) At 1:10 p.m., the supervisors entered the building and saw plaintiff's mail cart in a corner of the lobby near the building doorman. (Notice of Removal July 24, 2010.) The supervisors, observing that plaintiff had completed mail delivery at the building, took the mail cart and waited outside. (*Id.*)

When plaintiff returned and saw that his cart was gone, he called his union representative, who told him to call the police and the Postal Inspector. (Silverman Chan Dep. 217:7-218:17; Aug. 19, 2010 Confidential Witness Aff.) Plaintiff did as instructed. (Notice of Removal July 24, 2010.) He then called Duffy, who told plaintiff that his supervisors had taken the cart. (*Id.*) The supervisors then came back to the building and told plaintiff to return to Linden Hill. (*Id.*) Plaintiff responded that he could not leave until the police and the Postal Inspector arrived. (*Id.*) At approximately 2:25 p.m., the police arrived. (*Id.*) The Postal Inspector arrived at approximately 2:35 p.m. (*Id.*) Plaintiff was placed on emergency off-duty status when he returned to Linden Hill later that afternoon. (Duffy Decl. Ex. C.)

### b. Complaint

Plaintiff filed a sixth EEOC complaint on July 8, 2010 (Agency No. 4B-110-0159-10). (EEOC Compl. 6.) Redress mediation was offered and plaintiff elected mediation on July 23,

24

2010. (*Id.*) Plaintiff received a notice of removal for the July 7, 2010 incident on July 24, 2010.

(Notice of Removal July 24, 2010.) The formal Step A meeting was held September 10, 2010.

(Hong Decl. Ex. B.) The Step B proceeding held on September 22, 2010 resulted in impasse.

(*Id.*) The Postal Service cancelled mediation on September 24, 2010. (*Id.*) The informal

complaint was closed, and plaintiff was given the right to file a formal complaint. (*Id.*)

The formal complaint, filed October 15, 2010, against Sean Duffy and Anna Palanska,

included the original reprisal event in informal EEOC Compl. 6, which took place on July 7,

2010, and new reprisals from July 24, 2010, August 3, 2010, and October 1, 2010. (*Id.*) The

new reprisals involved the following:

- On July 24, 2010, Chan was issued a notice of removal for the July 7, 2010 incident. (EEOC Compl. 6.) He swore a confidential witness affidavit in connection with this notice of removal on August 19, 2010. (Aug. 19, 2010 Confidential Witness Aff.)

- On August 3, 2010, Chan was put on emergency placement in an off-duty status without pay for allegedly improperly handling mail. (Trexler Decl. Ex. H, ECF No. 33-8.)

- On October 1, 2010, Chan was issued a notice of removal for allegedly removing mail from his tray and placing it in his bag, misdelivering a test piece of mail, using his personal vehicle without permission, and leaving his mail cart unattended in a liquor store. (Ortiz Decl. Ex. B, ECF No. 28-9 ("Notice of Removal Oct. 1, 2010").) The notice of removal was based on an interview of Chan by OIG special agents Pastrana and Ventura that took place on August 4, 2010. (*Id.* at Ex. A.)

NEEOISO finalized a report with respect to these claims on April 13, 2011. (EEOC Compl. 6.)

**E. Arbitration and Administrative Law Judge Rulings**

**1. Arbitration Decision**

Having exhausted union grievance procedures, plaintiff went to arbitration. (Silverman

Decl. Ex. N, Aug. 29, 2014, ECF No. 28-14 ("Arbitration Decision").) The parties stipulated

"that the issue to be decided is 'did management have 'just cause' to issue Mr. Chan a letter of removal dated July 24, 2010 for failure to safeguard the mail and postal property?' If not, what should the remedy be?" (*Id.* at 3.) The arbitrator upheld Chan's termination. (*Id.* at 11.) By decision dated May 12, 2011, the arbitrator found that there was just cause for the July 24, 2010 notice of removal. (*Id.*)

## 2. Administrative Law Judge Decision

Plaintiff requested an EEOC hearing on May 13, 2011 with respect to the July 7, July 24, August 3, and October 1, 2010 reprisals. (*Id.*) On October 25, 2012, after holding three days of evidentiary hearings, ALJ Ricardo Cuevas rendered a decision regarding Chan's fourth and sixth EEOC complaints. (ALJ Decision.) The parties stipulated that the following issues required consideration:

(I)     Whether the Complainant was subjected to illegal employment discrimination on the basis of age (the Complainant falls within the protected age group) and/or Agency retaliation, when: (a) on May 20, 2009, the Complainant was issued a proposed letter of termination subsequently reduced to a fourteen (14) day suspension; (b) on July 7, 2010, the Complainant was placed on emergency off-duty status without pay; (c) on July 24, 2010, the Complainant was issued a proposed letter of termination and (d) on August 3, 2010, the Complainant was placed on emergency off-duty status without pay.

(II)    Whether the Complainant was subjected to illegal employment discrimination on the basis of race ("Asian-American"), age and/or Agency retaliation, when, on October 1, 2010, the Complainant was issued a proposed termination letter.

(*Id.* at 2.) Cuevas ruled against Chan. (*Id.* at 9.) Significantly, he refused to consider evidence that predated the current disciplinary actions in assessing Chan's retaliation claim. *See infra* Part V.C.1. He stated:

[T]he bottom line is . . . I've got to concentrate on what the timely allegations are and I don't go back unless I find some sort of viability on a timely claim before I can go back and perhaps make a connection between the timely violation and perhaps some previous violation.

(ALJ Hr'g Tr. Apr. 11, 2012, 40:20-25.) Cuevas ultimately reasoned that—because Chan admitted to violating USPS protocol with respect to incidents in 2009 and 2010—he "cannot . . . second-guess managerial discretion." (ALJ Hr'g Tr. Oct. 25, 2012, 333:6-7.) The ALJ found that Chan was not subjected to illegal employment discrimination when he was issued a proposed letter of termination on July 24, 2010. (ALJ Decision 9.) Cuevas explained:

> Mr. Chan's basic plea . . . is . . . guilty but guilty with an explanation. And once that happens, it becomes very, very difficult for one to turnaround [sic] and say to a factfinder, factfinder, you should substitute your decision-making authority for what a manager may have decided was the right course at that time.

(ALJ Hr'g Tr. Oct. 25, 2012, 335:17-25.)

On March 11, 2013, USPS adopted and implemented the ALJ decision and the agency issued a notice of final action to Chan. (EEOC Compl. 4; EEOC Compl. 6.)

### F. Linden Hill Supervisors' Awareness of Plaintiff's Protected Activity

USPS supervisors have shown that they were aware of Chan's EEOC complaints. Supervisor Hong testified: "I knew I heard about [Chan's] EEO[C] from Ms. Overstreet." (Silverman Decl. Ex. HH 36:20-22, Oct. 20, 2014, ECF No. 35-3 ("Hong Dep.").) Acting Manager Francisco Ortiz issued Chan a notice of removal on October 1, 2010, in which he accused Chan of "*once again* expos[ing] the mail assigned to you to theft . . . . The doorman[']s involvement in your actions at [142-18 38 Avenue] are suspicious." (Notice of Removal Oct. 1, 2010 (emphasis added).) Supervisor Marinacci also testified that supervisors at Linden Hill Station "talk, and would know if an employee had EEO[C] activity." (Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J. 6, ECF No. 29 (citing Marinacci Dep. 33) (not made available to the court).)

## G. Similarly Situated Employees

In his deposition, plaintiff identified eight similarly situated employees:

**Jennifer Tan**: An older "Chinese" employee at Linden Hill who began working there three years before Chan and was supervised by Overstreet. (Silverman Chan Dep. 255:22-257:16.) Tan allegedly violated postal rules by driving her personal vehicle without permission, by deviating from the assigned route, and by leaving her cart unattended. (*Id.* at 257:4-9, 257:20-25, 272:21-273:9.) Tan was not disciplined for this conduct. (*Id.* at 257:21-25, 258:15-16.)

**Nelson Hu**: An older "Chinese" employee at Linden Hill who began working there four years before Chan and was supervised by Overstreet. (*Id.* at 258:1-11, 258:20-259:6.) Hu allegedly violated postal rules by deviating from the assigned route, and by leaving his cart unattended. (*Id.* at 259:7-21, 273:17-24.)

**Marty Murray**: An older "White" employee at Linden Hill who retired in 2008 and was supervised by Overstreet. (*Id.* at 260:16-261:16.) Murray allegedly violated postal rules by driving his personal vehicle without permission and deviating from the assigned route. (*Id.* at 261:8-12.)

**Nick Kocefous**: An older "White" employee at Linden Hill who was supervised by Overstreet. (*Id.* at 261:17-262:13.) Kocefous allegedly violated postal rules by driving his personal vehicle without permission, by deviating from the assigned route, and by leaving his cart unattended. (*Id.* at 262:7-11, 274:14-21.)

**Danny Mulhern**: An older "Irish" employee at Linden Hill who was supervised by Overstreet. (*Id.* at 262:21-263:6, 264:18-19.) Chan alleges that, after Mulhern received a fourteen-day suspension, Mulhern "ma[de] a deal under the table with the manager" or "ma[de] a deal with the union" and did not receive any further discipline. (*Id.* at 263:12-22.) Mulhern allegedly violated postal rules by helping his wife deliver her USPS route, and by leaving his cart unattended. (*Id.* at 264:1-4, 275:4-23.) Mulhern was not disciplined for this conduct. (*Id.* at 263:25.)

**Elaine Tao**: A younger "Chinese" employee at Linden Hill who was supervised by Overstreet. (*Id.* at 264:20-256:3, 265:19-20.) Tao allegedly violated postal rules by leaving her mail unattended near the relay box. (*Id.* at 276:7-23.) Tao was not disciplined for this conduct. (*Id.* at 265:13-18.)

**Nolly [Last Name Not Identified]**: An older "Filipino" employee at Linden Hill who was supervised by Overstreet. (*Id.* at 265:21-266:11, 266:22-23.) The employee allegedly violated postal rules by driving a personal vehicle without permission and leaving mail unattended. (*Id.* at 266:12-16, 277:7-15.)

**Arnold Powell**: A "Filipino" employee at Linden Hill who was about Chan's age. (*Id.* at. 266:24-267:9.) Powell violated postal rules by doing his supplementary route before completing mail deliveries on his regular route, and by leaving his mail unattended. (*Id.* at 267:1-14, 277:19-287:3.)

## III.  Summary Judgment Standard

Summary judgment may only be granted where it is shown that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (internal quotation marks and citation omitted). The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

No genuinely triable factual issue exists "if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). If the movant meets this burden, the non-moving party must provide "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks and citation omitted). "When a case is fact-intensive and turns on the intent of one party, as employment discrimination cases often do, 'trial courts must be especially chary in handing out summary judgment.'" *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 375 (S.D.N.Y. 2007) (quoting *Chertkova*, 92 F.3d at 87). "The trial court is under a duty in such cases to

carefully scrutinize the record for circumstantial evidence that could support an inference of discrimination." *Id.* (citing *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994)). "[T]he trial court's task at the summary judgment motion stage . . . is confined . . . to issue-finding; it does not extend to issue-resolution." *Gallo*, 22 F.3d at 1224, 1228 (finding that plaintiff presented sufficient "circumstantial evidence regarding the motivation of the decision maker who fired her that, if believed, would support her claim of discrimination").

## A. Effect of Prior Decision by Independent Tribunal

The Supreme Court has ruled that a negative arbitration decision does not preclude a Title VII action, but "[t]he arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 60 (1974). "Where an arbitral determination gives *full consideration* to an employee's Title VII rights, a court may properly accord it great weight." *Id.* at 60 n.21 (emphasis added).

The Court of Appeals for the Second Circuit has held that:

> [A] negative arbitration decision rendered under a CBA does not preclude a Title VII action by a discharged employee. However, a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link. Where . . . that decision follows an evidentiary hearing and is based on substantial evidence, *the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact*—*e.g.*, new evidence not before the tribunal—or that the impartiality of the proceeding was somehow compromised.

*Collins v. N.Y.C. Transit Auth.*, 305 F.3d 113, 119 (2d Cir. 2002) (emphasis added) (citation omitted). *See also Gallimore Wright v. Long Island R.R. Co.*, 354 F. Supp. 2d 478, 491–93 (S.D.N.Y. 2005) (holding that arbitrator's finding that plaintiff engaged in the wrongdoing that defendant charged her with was probative with respect to whether plaintiff's termination was discriminatory or retaliatory).

## B. Consideration of Relevant Background Evidence

In *Jute v. Hamilton Sundstrand Corp.*, on a summary judgment motion, the Court of Appeals for the Second Circuit held that that a district court should consider arguably retaliatory adverse employment actions that were not "specifically raised" in an EEOC charge because "'loose pleading' is permitted before the EEOC" and "[a] complaint of retaliation 'could reasonably be expected to inquire into other instances of alleged retaliation.'" 420 F.3d 166, 176–78 (2d Cir. 2005) (citations omitted). *See also Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 150 (2d Cir. 2012) (holding that as long as at least one alleged adverse employment action occurred within the applicable filing period for a Title VII claim, evidence of an earlier alleged retaliatory act may constitute relevant background evidence) *cert. denied sub nom. Eng v. Port Auth. of N.Y. & N.J.*, 133 S. Ct. 1724 (2013); *Morris v. Town of Islip*, No. 12-CV-2984, 2014 WL 4700227, at *16 (E.D.N.Y. Sept. 22, 2014) ("claims that were not asserted before the EEOC . . . may be pursued in a subsequent federal court action if they are reasonably related to those that were filed with the agency") (internal quotation marks and citations omitted).

## IV.    Law

### A. Statutes

Plaintiff sues under Title VII and the ADEA. Title VII reads in relevant part:

> All personnel actions affecting employees . . . in the United States Postal Service . . . shall be made free from any discrimination based on race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-16 (2014).

The ADEA states, in relevant part, that it is "unlawful for an employer" to:

> discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[,]

[and/or]

> discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.

29 U.S.C. § 623(a)(1), (d) (2014).

## B. Exhaustion of Administrative Remedies Standard

A precondition to filing an action in federal court under Title VII is a plaintiff's timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1). "The purpose of this exhaustion requirement is to give the administrative agency the opportunity to investigate, mediate and take remedial action." *Brown v. Coach Stores Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (international quotation marks and citation omitted). Provided a federal employee did not begin the administrative review process with respect to an ADEA claim, a federal employee may proceed with an ADEA claim directly to a district court within ninety days of giving notice to the EEOC of intention to file. 42 U.S.C. § 2000e-5(e)(3)(B)(1); *Henry v. Donahoe*, 931 F. Supp. 2d 441, 447 n.3 (E.D.N.Y. 2013) *appeal dismissed*, No. 13-1464 (2d Cir. Sept. 19, 2013).

## C. Discrimination Claims Standard

In evaluating discrimination claims brought under Title VII or the ADEA, courts apply the burden shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–5 (1973). "This framework, which was developed in the context of claims for discrimination under Title VII, applies to claims of age discrimination under the ADEA." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir. 2012) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107, 110 (2d Cir. 2010)).

32

### 1. Plaintiff's Burden: Prima Facie Case

Under the *McDonnell Douglas* burden shifting framework, a plaintiff must first establish a prima facie case of discrimination by showing: "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008). The burden of establishing a prima facie case of employment discrimination has been described as "modest," *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994), or even "minimal," *Roge v. NYP Holdings, Inc.*, 257 F.3d 164, 168 (2d Cir. 2001).

#### a. Stray Remarks Insufficient to Establish Prima Facie Case

"In the absence of a clearly demonstrated nexus to an adverse employment action, stray workplace remarks are insufficient to defeat a summary judgment motion." *Almonord v. Kingsbrook Jewish Med. Ctr.*, No. 04-CV-4071, 2007 WL 2324961, at *9 (E.D.N.Y. Aug. 10, 2007) (citation omitted) (citing cases). "It is well established that 'the stray remarks even of a decision-maker, without more, cannot prove a claim of employment discrimination.'" *Hasemann v. United Parcel Serv. of Am., Inc.*, No. 11-CV-554, 2013 WL 696424, at *6 (D. Conn. Feb. 26, 2013) (quoting *Abdu–Brisson v. Delta Airlines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001)) (citing cases). *See also Buckman v. Calyon Sec. (USA) Inc.*, 817 F. Supp. 2d 322, 355 (S.D.N.Y. 2011) (finding that isolated alleged comment that worker "was a good fit for sales because he is white" was not probative of whether plaintiff was discharged because of his race); *cf. Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) ("[M]ere utterance of an epithet which engenders offensive feelings in a[n] employee . . . does not sufficiently affect the conditions of employment to implicate Title VII.") (internal quotation marks and citation omitted).

### b. Inference Against Discrimination

An "inference against discrimination exists where the person who participated in the allegedly adverse decision is also a member of the same protected class." *Drummond v. IPC Int'l., Inc.*, 400 F. Supp. 2d 521, 532 (E.D.N.Y. 2005). If a decision maker is in the same protected class as plaintiff, claims of discrimination become less plausible. *Id.*; *see also Williams v. Brooklyn Union Gas Co.*, 819 F. Supp. 214, 225 (E.D.N.Y. 1993) (dismissing age discrimination claims where the employees responsible for plaintiff's termination were older than plaintiff or approximately the same age).

### 2. Employer's Burden: Articulate Non-Discriminatory Reason for Employment Action

If the plaintiff establishes a prima facie case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for [the adverse action]." *Holcomb*, 521 F.3d at 138 (internal quotation marks and citation omitted). The employer's burden of showing a legitimate non-discriminatory reason for its actions does not present a steep hurdle. It is a burden of "production, not persuasion; it can involve no credibility assessment." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (internal quotation marks and citation omitted). "Evidence that an employer made a poor business judgment in discharging an employee generally is insufficient to establish a question of fact as to the credibility of the employer's reasons." *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988) (citation omitted).

### 3. Assessing Whether Employer's Stated Reason is Pretextual

Should the employer satisfy its burden by articulating a non-discriminatory reason for the employment action in question, the *McDonnell Douglas* framework and its presumptions and

34

burdens disappear, leaving the sole remaining issue of "discrimination *vel non*." *Reeves*, 530

U.S. at 142–43 (citation omitted). "In short, [in order to assess pretext], the district court must

decide which party's explanation of the employer's motivation it believes." *United States Postal*

*Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983).

### D. Retaliation Claim Standard

The *McDonnell Douglas* burden-shifting framework "applies to claims . . . of retaliation

under Title VII and the ADEA." *Bucalo*, 691 F.3d at 129 (citation omitted). The Court of

Appeals for the Second Circuit recognizes:

> If it were clear law that an employee who reported discrimination . . . could be penalized
> with no remedy, prudent employees would have a good reason to keep quiet about
> [discrimination] offenses against themselves or against others. This is no imaginary
> horrible given the documented indications that fear of retaliation is the leading reason
> why people stay silent instead of voicing their concerns about bias and discrimination
> . . . . Nothing in the statute's text or our precedent supports this catch-22.

*Crawford v. Metro. Gov't of Nashville*, 555 U.S. 271, 279 (2009) (internal quotation marks and

citations omitted).

### 1. Plaintiff's Burden: Prima Facie Case

The Court of Appeals has described the first stage of the retaliation burden-shifting

analysis as follows:

> First, the plaintiff must establish a prima facie case of retaliation by showing:
> (1) participation in a protected activity; (2) that the defendant knew of the protected
> activity; (3) an adverse employment action; and (4) a causal connection between the
> protected activity and the adverse employment action. The plaintiff's burden in this
> regard is *de minimis*, and the court's role in evaluating a summary judgment request is to
> determine only whether proffered admissible evidence would be sufficient to permit a
> rational finder of fact to infer a retaliatory motive.

*Hicks v. Baines*, 593 F.3d 159, 164–65 (2d Cir. 2010) (internal quotation marks and citations

omitted).

35

### a. First Prong: Engagement in Protected Activity

"The term 'protected activity' refers to action taken to protest or oppose statutorily prohibited discrimination," *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *superseded by statute on other grounds by* N.Y.C. Local L. No. 85, and may take the form of either formal or informal complaints, *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 466 (S.D.N.Y. 2006). Filing a formal complaint of discrimination with an administrative agency is protected activity. *See Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 65 (2d Cir. 1992).

### b. Second Prong: Employer's Awareness of Protected Activity

To constitute protected activity, the plaintiff's conduct must have "put the employer on notice" that the plaintiff believed that discrimination was occurring. *Penberg v. HealthBridge Mgmt.*, 823 F. Supp. 2d 166, 191 (E.D.N.Y. 2011). A defendant will be considered to have been put on notice in circumstances where the plaintiff filed a formal complaint with an administrative agency. *See* 42 U.S.C. § 2000e–5(b) (noting that after an EEOC complaint has been filed, "the Commission shall serve a notice of the charge" to the employer within ten days).

### c. Third Prong: Adverse Employment Action

The term "adverse employment action" refers to one or more actions that change the terms and conditions of an individual's employment. *See, e.g., Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006) (internal quotation marks and citation omitted). The action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (internal quotation marks and citation omitted). Termination satisfies the third prong of the prima facie retaliation test. *See, e.g., Lewis v. N.Y.C. Transit Auth.*, No. 04-CV-2331, 2014 WL 1343248, at *15 (E.D.N.Y. Mar. 31, 2014) (citing *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008)).

### d. Fourth Prong: Causal Connection between Adverse Action and Protected Activity

Proof of causation can be shown indirectly. *Hicks*, 593 F.3d at 170 (internal quotation marks and citation omitted). A plaintiff can successfully do so "by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct." *Id.*

#### i. Temporal Proximity

The Court of Appeals for the Second Circuit has indicated that up to a seven-month gap between protected activity and an adverse employment action is "not prohibitively remote." *Summa v. Hofstra Univ.*, 708 F.3d 115, 128 (2d Cir. 2013) (citation omitted). *See also Gorzynski*, 596 F.3d at 110 ("[W]e have previously held that five months is not too long to find the causal relationship."). "We have not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (internal quotation marks and citation omitted).

#### ii. Similarly Situated Comparators

An "all material respects" standard applies to assessing similarly situated comparators. *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). The standard requires "a plaintiff [to] show that [his or] her co-employees were subject to the same performance evaluation and discipline standards . . . [and] that . . . the employees who went undisciplined engaged in comparable"—albeit "not [] identical"—"conduct." *Id.* (internal quotation marks and citations omitted).

What constitutes "all material respects" therefore varies somewhat from case to case and . . . must be judged based on (1) whether the plaintiff and those he maintains were

37

similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. In other words, there should be an objectively identifiable basis for comparability. Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical.

*Id.* (internal quotation marks and citations omitted).

"Whether two employees are similarly situated ordinarily presents a question of fact for the jury," and not one to be resolved on a dispositive motion. *Id.* at 39 (citation omitted). In *Matusick v. Erie Cnty. Water Auth.*, the Court of Appeals for the Second Circuit explained:

[Even though] none of the[] employee[] [comparators] had as extensive a history of behavior potentially subject to legitimate discipline as did [plaintiff], . . . it does not follow that they cannot serve as comparators. . . . There may not have been anyone at the [Water Authority] who engaged in exactly the same misconduct as did [plaintiff], but this does not preclude the jury from considering the way that other employees who also engaged in disciplinable on-the-job misconduct were treated.

757 F.3d 31, 54 (2d Cir. 2014) (affirming denial of defendants' Rule 50 motions).

### 2. Employer's Burden: Articulate Non-Retaliatory Reason for Employment Action

"Once the plaintiff has established a prima facie showing of retaliation, the burden shifts to the employer to articulate some legitimate, non-retaliatory reason for the employment action." *Kwan*, 737 F.3d at 845 (citation omitted). After the defendant does so, "the presumption of retaliation arising from the establishment of the prima facie case drops from the picture." *Id.* "Federal courts do not have a 'roving commission to review business judgments,' and may not 'sit as super personnel departments, assessing the merits—or even the rationality—of employers' non-discriminatory business decisions.'" *Greene v. Brentwood Union Free Sch. Dist.*, 966 F. Supp. 2d 131, 156 (E.D.N.Y. 2013) (internal quotation marks and citations omitted).

38

### 3. Assessing Whether Employer's Stated Reason is Pretextual

In order to successfully rebut an employer's purported non-discriminatory reason for the employment action, the plaintiff must establish pretext. *Kwan*, 737 F.3d at 845. Retaliation must be shown as the "but-for" cause of the adverse action. *Id*. The standard for establishing pretext is summarized as follows:

> The Supreme Court recently held that a plaintiff alleging retaliation in violation of Title VII must show that retaliation was a "but-for" cause of the adverse action, and not simply a "substantial" or "motivating" factor in the employer's decision. However, "but-for" causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive.
>
> A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action. From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason.

*Id*. at 845–46 (citations omitted).

"The determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact." *Id*. at 846 n.5. *See also Henry v. Metro. Transp. Auth.*, No. 07-CV-3561, 2014 WL 4783014, at \*19 (S.D.N.Y. Sept. 25, 2014) ("While a jury may find, after a trial, that [the chief in charge of submitting candidates for promotion] did conduct an investigation and that her investigation is probative of [defendant]'s lack of retaliatory motive, that finding will be one of fact, not law.").

## V. Application of Law to Facts

### A. Exhaustion of Administrative Remedies

#### 1. Race and Age Discrimination Claims

Plaintiff satisfies the preconditions required to file this action with respect to his race and age claims. *See supra* Part IV.B. After the ALJ issued a decision, which was premised on Chan's charges of race and age discrimination and retaliation, Chan was provided a notice of right to file a civil action. (Feuerstein Decl. ¶¶ 44–45, 67–68.) His complaint, alleging discrimination based on national origin, race and age, and retaliation was filed within ninety days of USPS's final agency decision dated March 8, 2013. 42 U.S.C. § 2000e-5(e)(3)(B)(1).

#### 2. National Origin Discrimination Claim

Because Chan did not exhaust available administrative remedies with respect to his Title VII national origin discrimination claim, he cannot assert the claim now. *Id.*

Defendant's motion for summary judgment regarding Chan's national origin claim is granted.

### B. Discrimination Claims

#### 1. Race

Chan cannot establish a prima facie claim of race-based discrimination because he cannot link any of the adverse employment actions he experienced to circumstances giving rise to an inference of discrimination. *See supra* Part IV.C.1. The only clear race-based allegation stems from stray comments made to him by an immediate supervisor in 2005. Chan alleges that Overstreet joked about the way Chan spoke English, mimicked his accent, and asked him how to spell words like "library," "whatever,'" and "hour.'" (Chan Decl. ¶¶ 8–9.) This is insufficient to

40

support an inference of race discrimination under the *McDonnell Douglas* framework. *See supra*

Part IV.C.1.a.

Defendant's motion for summary judgment regarding Chan's race-based claim is granted.

## 2. Age

Chan fails to support a prima facie claim of age-based discrimination. He cannot link any

of the adverse employment actions he experienced to circumstances giving rise to an inference of

age discrimination. *See supra* Part IV.C.1. Chan only alleges that Hong commented that a

floater mail carrier, twenty-seven-year-old Joseph Alini, who covered Chan's mail route on his

days off, was able to deliver mail faster than Chan and needed less overtime. (Silverman Chan

Dep. 129:10-13.) This single remark, even if construed in a way that implicates Chan's age, is

insufficient to establish a facially plausible age discrimination claim. *See supra* Part IV.C.1.a.

Reinforcing this conclusion is the especially well-recognized inference against discrimination

that occurs when a plaintiff alleges discrimination by a member of the same protected class. *See*

*supra* Part.IV.C.1.b. Hong, born in 1956, was approximately the same age as plaintiff. (Def.

Consol. Statement of Undisputed Material Facts Pursuant to 56.1 ¶ 21, ECF No. 35-2.)

Defendant's motion for summary judgment regarding Chan's age discrimination claim is

granted.

## C. Retaliation Claim

### 1. The Arbitration and Administrative Law Judge Decisions Do Not Sufficiently Consider Background Evidence Underlying Plaintiff's Allegations of Retaliation

Neither the ALJ decision nor the arbitration decision sufficiently analyze Chan's

retaliation claim in a way that precludes a jury trial. *See supra* Part III.

The arbitration decision fails to do so because the parties stipulated "that the issue to be decided is 'did management have 'just cause' to issue Mr. Chan a letter of removal dated July 24, 2010 for failure to safeguard the mail and postal property?' If not, what should the remedy be?" *See supra* Part II.E.1.

Although the case before ALJ Cuevas had a broader scope and was subject to three days of evidentiary hearings, he did not consider allegations of retaliation that extended beyond the statute of limitations period. *See supra* Part II.E.2. Cuevas's reasoning regarding the admissibility and sufficiency of evidence with respect to Chan's retaliation claim does not comport with Second Circuit precedent. *See supra* Part III.B. The Court of Appeals for the Second Circuit has consistently held that allegations of retaliation that extend beyond the limitations period should be considered as background evidence in order to appropriately assess the validity of a retaliation claim. *See, e.g.*, *Jute*, 420 F.3d at 176 (finding that when an employee's allegations of retaliation extend beyond the limitation period, the circumstances surrounding the claim will determine precisely what consideration is owed to the time-barred conduct). In *Jute*, the court found that that the district court's decision "not to 'consider' those alleged instances of adverse employment action [outside the limitations period] . . . significantly altered the nature of [plaintiff]'s case." *Id.* at 177. The background evidence showed "a chain of events" supporting plaintiff's claim. *Id.*

*Collins*, relied upon by defendant, is inapposite. 305 F.3d 113. In *Collins*, "the tribunal received all the available evidence in an evenhanded proceeding and rendered a decision consistent with the almost overwhelming evidence of [the assault claim]." *Id.* at 119. The same cannot be said here because Cuevas refused to consider background evidence probative of plaintiff's retaliation claim. *See supra* Part II.E.2. While the ALJ conducted three days of

evidentiary hearings, at which multiple witnesses testified, his ultimate decision was restricted to assessing the validity of unique disciplinary actions on their face. Ignored was the critical question: Whether the facts assessed as a whole indicated that Linden Hill supervisors had targeted Chan for removal as opposed to other comparators. *Id.* The ALJ's analysis of Chan's retaliation claim started at the endpoint of the claim, not at its inception when the claimed causes of abuse allegedly began metastasizing. *See generally* Part II.C.

Because Cuevas did not consider critical background evidence, his findings regarding "but-for" causation with respect to Chan's retaliation claim—a heavily fact-based inquiry that is not suited to disposition at the summary judgment stage, *Kwan*, 737 F.3d at 846—cannot be relied upon.

### 2. Plaintiff Has Established a Prima Facie Showing of Retaliation and Sufficiently Alleged Pretext

Chan alleges that his supervisors—in retaliation for his race- and age-based complaints filed with the EEOC—collectively sought to build a disciplinary record against him that ultimately resulted in his removal. Chan satisfies the first three prongs of the prima facie retaliation test. *See supra* Part IV.D.1.a–c. *First*, he participated in protected activity on six occasions. *See supra* Parts II.D & IV.D.1.a. *Second*, sufficient evidence has been marshalled to demonstrate that defendant was aware of plaintiff's protected activity. *See supra* Parts II.F. & IV.D.1.b. *Third*, plaintiff's termination is considered an adverse employment action. *See supra* Part IV.D.1.c.

Defendant argues that plaintiff fails the fourth prong of the prima facie retaliation test because he cannot establish that his protected activity caused his termination. (Reply Mem. of Law in Supp. of Def.'s Mot. for Summ. J. 11–16, ECF No. 35-1.) Defendant claims that the

comparators discussed by Chan in his deposition are not sufficiently similar in "all material respects." *Id.* (citing *Fordham v. Islip Union Free Sch. Dist.*, No. 08-CV-2310, 2012 WL 3307494, at \*9 (E.D.N.Y. Aug. 13, 2012) (citation omitted)). Defendant, however, omits a constructive discussion of the "all material respects" standard. *See supra* Part IV.D.1.d.ii. In his deposition, plaintiff identified eight comparators. *See supra* Part II.G. The detail with which Chan describes these comparators indicates that a reasonable jury could find that Chan was disparately treated when compared to employees who engaged in similar conduct.

Chan has satisfied his burden of establishing pretext by relying on weaknesses in USPS's proffered reasons for terminating plaintiff—*i.e.*, violation of USPS regulations governing mail carriers. A chain of events dating back to 2005 supports his claim that Linden Hill station managers collectively sought to build a disciplinary record against him that would eventually result in his official termination. *See generally supra* Part II.C. This is sufficient for Chan to proceed to trial. *See, e.g., Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 105–7 (2d Cir. 2001) (discrimination case highlighting weaknesses in employer's proffered reasons for treatment of plaintiff); *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136–37 (2d Cir. 2000) (same); *Reeves v. Johnson Controls World Servs., Inc.*, 140 F.3d 144, 156–57 (2d Cir. 1998) (same), *superseded by* statute on other grounds as stated in *Hilton v. Wright*, 673 F.3d 120, 128 (2d Cir. 2012); *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994) (same) (collecting cases).

This finding gives weight to the Court of Appeals for the Second Circuit declaration that "there is a need for caution about granting summary judgment to an employer in a discrimination case where the merits turn on a dispute as to the employer's intent." *Kwan*, 737 F.3d at 843 (internal quotation marks and citation omitted). *See also Viola*, 42 F.3d at 716 ("A grant of

44

summary judgment [in an employment discrimination case] is proper only if the evidence of discriminatory intent is so slight that no rational jury could find in plaintiff's favor."). A long history of evidence of what was possibly unlawful animus leading up to Chan's termination should be considered at a jury trial.

Defendant's motion for summary judgment regarding Chan's retaliation claim is denied.

## VI.    Conclusion

Defendant's motions for summary judgment regarding plaintiff's national origin, race and age discrimination claims are granted. The Postmaster General's motion for summary judgment with respect to retaliation is denied.

Trial shall start on March 9, 2015. A jury will be selected by a magistrate judge.

*In limine* motions will be heard on March 2, 2015 at 10:00 a.m.

By February 23, 2015, the parties shall each submit to the court a full proposed jury charge and verdict sheet, *in limine* motions, and any supporting briefs. They shall exchange and file with the court: (1) lists of pre-marked exhibits proposed for use at trial, together with copies of all exhibits; (2) lists of potential witnesses together with brief summaries of proposed testimony; and (3) stipulations with respect to all undisputed facts.

Any disputes related to briefing schedules or discovery are respectfully referred to the magistrate judge.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: December 4, 2014
        Brooklyn, New York